Patrick N. Keegan, Esq. (SBN 167698)
pkeegan@keeganbaker.com
**KEEGAN & BAKER, LLP**
5055 Avenida Encinas, Suite 240
Carlsbad, CA 92008
Tel:   (760) 929-9303
Fax:   (760) 929-9260

Attorney for Plaintiff
DOUGLAS O'CONNOR

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR, individually and on behalf of all other persons similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> LYFT, INC., a Delaware corporation; and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No. 3:16-cv-00351 <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF:** <br><br> **1.   THE TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. §§ 227 et seq.); and** <br><br> **2.   THE CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 et seq.** |

Plaintiff Douglas O'Connor ("Plaintiffs"), through his undersigned attorney, on behalf of himself and all other persons similarly situated, alleges on information and belief against Lyft, Inc. (hereinafter "Lyft" or "Defendant") and DOES 1 through 20, as follows:

**INTRODUCTION**

1.   Plaintiff bring this class action complaint for damages, injunctive relief, and ay other available legal or equitable remedies, individually and on behalf of all other persons similarly situated, as a result of Lyft's practice or sending text messages, i.e. wireless spam, to Plaintiff, and all other persons similarly situated, located in California, on their cellular telephones without their prior express consent in violation of the Telephone Consumer Protection Act, 47 U. S. C. § 227 et seq. ("TCPA")

2.   The TCPA exists to prevent communications like the ones described within this complaint. "Voluminous consumer complaints about abuses of telephone technology—for example,

computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3. By passing the TCPA, Congress intended to provide consumers a choice as to how telemarketers may call them and found that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." Pub. L. No. 102–243, § 11. Congress also found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance . . ." *Id.* at §§ 12-13.

4. The TCPA's ban on telephone calls made using "an automatic telephone dialing system", as defined by 47 U.S.C. § 227(a)(1), has been interpreted to extend to unsolicited autodialed text messages sent to cellular phones. *E.g.*, FCC Declaratory Ruling, 27 F.C.C.R. 15391, 2012 WL 5986338 (Nov. 29, 2012); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014); *Gager v. Dell Fin. Servs., Inc.*, 727 F.3d 265, 269 n.2 (7th Cir. 2013).

5. Lyft acts as a passenger transportation service that connects riders and drivers through a cellular telephone application.

6. Lyft's cellular telephone application allows users to request and pay for "on-demand" car services.

7. Lyft drivers use their own cars to provide the car services but receive requests from Lyft users via the cellular telephone application.

8. Lyft has rapidly expanded since its founding in 2012 and now provides services in over 65 cities, with plans to expand domestically.

9. As of May 2015, Lyft had raised more than $1 billion from investors including Carl Icahn, Rakuten, Coatue Management, Alibaba, Andreessen Horowitz, Fortress, Third Point, Founders Fund, Mayfield Fund, K9 Ventures and Floodgate.

10. With the ever-increasing demand for more rides in even more cities, Lyft has taken an aggressive approach to recruit new drivers onto their Lyft platform.

11. Lyft's recruiting tactics include sending prolific text messages, i.e. wireless spam, to prospective Lyft drivers, like Plaintiff, on their cellular telephones without their prior express

consent, in violation of the TCPA and the California Business and Professions Code § 17200 et seq.

**JURISDICTION AND VENUE**

12.     Defendant has removed this action from the Superior Court of the State of California for the County of San Mateo alleging in its Notice of Removal (Dkt No. 1) that this Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331, pursuant to Plaintiff's allegations and causes of action that the Defendant violated the TCPA. (Dkt No. 1, ¶4).

13.     Defendant has removed this action from the Superior Court of the State of California for the County of San Mateo alleging in its Notice of Removal (Dkt No. 1) that this Court also has supplemental jurisdiction, under 28 U.S.C. § 1367, over plaintiff's state-law claim for alleged violation of California's Unfair Competition Law because that claim arises out of the same alleged acts on which plaintiff premises his federal TCPA claim. (Dkt No. 1, ¶6).

14.     Defendant has removed this action from the Superior Court of the State of California for the County of San Mateo alleging in its Notice of Removal (Dkt No. 1) that venue is proper in the Northern District pursuant to 28 U.S.C. § 1441(a) on the grounds that the United States District Court for the Northern District of California encompasses the County of San Mateo, where the state-court action was filed, citing 28 U.S.C. § 84(a). (Dkt No. 1, ¶8).

**PARTIES**

15.     Plaintiff Douglas O'Connor is and at all times relevant was an adult residing in South San Francisco, California. On multiple occasions over multiple days, including June 28, 2013 and July 19, 2013, within the applicable statute of limitations period and within four years prior to the date this Complaint was filed, Lyft sent the text messages using an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1). These text messages constitute use of "an artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A). These text messages that Lyft sent were not for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i). Plaintiff's cellular telephone number Lyft sent text messages to was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming texts as described in 47 U.S.C. §227(b)(1)(A)(iii). Plaintiff did not provide express consent to Lyft to receive text messages on Plaintiff's cellular telephone, pursuant to 47 U.S.C. § 227(b)(1)(A).

16. Defendant Lyft, Inc. (hereinafter "Defendant" or "Lyft") is a Delaware corporation and states in its filings with the California Secretary of State that its principal place of business is located at 2300 Harrison St, San Francisco, CA 94110. Lyft sent the text messages to Plaintiff on his cellular telephone via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), at locations within this judicial district.

17. Whenever in this complaint reference is made to any act of Lyft, such reference shall be deemed to mean that such corporate defendant did the acts alleged in the complaint through its officers, directors, agents, employees, and/or representatives while they were acting within the actual or ostensible scope of their authority.

18. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, are currently unknown to the Plaintiff, who therefore sues the Defendants by such fictitious names under the Code of Civil Procedure § 474. Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES 1 through 20 when such identities become known. Any reference made to a named defendant by specific name or otherwise, individually or plural, is also a reference to the actions or inactions of DOES 1 through 20, inclusive.

19. Each Defendant acted in all respects pertinent to this action as the agent or joint venturer of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants. Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

20. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in violating the law, as alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/its

primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

### FACTUAL ALLEGATIONS AS TO PLAINTIFF

21. In or around June of 2013, Plaintiff was interested in becoming a driver for Lyft. He began the sign-up process on Lyft's Internet website to learn about the requirements to become a Lyft driver.

22. While Plaintiff provided some of his personal information to Lyft at the beginning of the driver sign-up process, he decided not to complete the sign-up process to become a Lyft driver (and in fact, never became a Lyft driver).

23. Plaintiff never finished the sign-up process to become a Lyft driver, and withdrew his application. Accordingly, Plaintiff did not make available, supply, furnish for use, or knowingly release his personal information to Lyft.

24. Thus, Plaintiff did not, at any point during the sign-up process, provide Lyft with his express consent to receive automated text messages to his cell phone.

25. In June of 2013, Plaintiff began to receive automated text messages from Lyft on his cellular phone.

26. Specifically, on June 28, 2013, Lyft sent Plaintiff a text message: "Hey there! Your Lyft driver application is nearly finished but before we can proceed, I need you to open the Lyft app and follow the short tutorial that pops up"… A second text continued: "…when you tap the car icon. Just give me a call back at (415) 508-4571 when you've done that and I'd be happy to help you become a part of the Lyft community :) ".

27. On July 19, 2013, Lyft sent Plaintiff another text message: "Are you still interested in driving with Lyft? If not, reply no. If so, call me at 415-508-4571. Olivia @ Lyft."

28. Lyft never sent Plaintiff a text message informing him that he could opt out of receiving text messages.

29. Between June of 2013 and July of 2014, Plaintiff received automated text messages from Lyft, including from phone number (415) 635-0488.

30. These text messages are not personalized to Plaintiff and are large automated text

1  distributions from Lyft to multiple recipients.

2  31.   The automated text messages that Lyft sent to Plaintiff were to a cellular telephone number for which Plaintiff is charged for incoming calls and text messages as described in 47 U.S.C. §227(b)(1)(A)(iii). The last four digits of Plaintiff's cellular telephone number is "1002."

3  32.   These text messages that Lyft sent were not for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

4  33   Lyft sent these text messages using an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), (hereinafter an "ATDS"). Lyft's ATDS has the capability to both: (1) store or produce cellular telephone numbers to be texted using a random or sequential number generator, and (2) automatically send text messages from a list or database of cellular telephone numbers, without human intervention.

5  34.   These text messages from Lyft also constitute "artificial or prerecorded voice" calls prohibited by 47 U.S.C. § 227(b)(1)(A).

6  35.   These text messages that Lyft sent to Plaintiff were sent without Plaintiff's prior express consent.

7  36.   Plaintiff alleges that each text message he received from Lyft violated 47 U.S.C. § 227(b)(1).

## CLASS ACTION ALLEGATIONS

37.   This action has been brought and may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure (FRCP) because the proposed class is ascertainable and there is a well-defined community of interest in the litigation, as described further below.

38.   Plaintiff brings this action on behalf of himself and all other persons similarly situated pursuant to FRCP 23. Plaintiff seeks to represent a class of persons defined as follows:

> All persons in the United States of America who received, without their prior expressed consent, a non-emergency text message on their cellular telephone from Lyft, using an ATDS, within the Class Period (hereinafter the "Class").

39.   Defendants and their shareholders, officers, directors, employees and agents are excluded from the Class.

///

40. The aforementioned Class Period shall mean the period commencing from no less than four years prior to the date of the filing of Plaintiff's original Complaint and ending no later than the date of trial.

41. Plaintiff reserves the right under FRCP 23 to amend or modify the Class definition and Class Period with greater particularity or further division into subclasses or limitation to particular issues as warranted as additional facts are discovery by Plaintiff during his future investigations.

42. Plaintiff does not, as yet, know the exact size of the Class. Based upon the nature of Lyft's business, Plaintiff believes that there are numerous Class members, and that Class members are geographically dispersed throughout the United States of America. Thus, the Class is sufficiently numerous to make joinder impracticable, if not completely impossible. The disposition of the claims of all members of the Class in a class action will benefit both the parties and the Court. In addition, the Class is readily identifiable from information and records in the possession of Lyft, the Class and third parties.

43. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

    a. Whether, during the Class Period, Defendant sent any text messages to Plaintiff's and Class members' telephone numbers assigned to a cellular telephone service;

    b. Whether, during the Class Period, Defendant sent any text messages to Plaintiff's and Class members' cellular telephone numbers using an ATDS;

    c. Whether, during the Class Period, Defendant sent any text messages to Plaintiff's and Class members' cellular telephone numbers for an emergency purpose;

    d. Whether Defendant obtained valid express consent from any recipient of the automated text messages sent during the Class Period;

    e. Whether Plaintiff and members of the Class are entitled to an award of $500.00 in statutory damages, for each and every negligent violation of the TCPA;

    f. Whether Plaintiff and members of the Class are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation of the TCPA; and

    g.  Whether Defendant should be enjoined from engaging in TCPA violations in the future.

44. Plaintiff's claims are typical of those of the other Class members because Plaintiff, like every other Class member, were exposed to virtually identical conduct and is entitled to actual and statutory damages per violation pursuant to 47 U.S.C. § 227(b)(3).

45. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interest that is contrary to or in conflict with those members of the Class he seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation involving TCPA violations to further ensure such protection and he intends to prosecute this action vigorously.

46. Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendant throughout in the United States of America. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Moreover, the Class members' individual damages are insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Absent a class action, the Class will continue to face the potential for irreparable harm, and continued violations of law will be allowed to proceed without remedy as Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein absent certification as a class action.

First Amended Class Action Complaint    8    Case No. 3:16-cv-00351

47.     In addition, Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

48.     At all relevant times, Plaintiff and the Class are, and at all times mentioned herein, were "persons" as defined by 47 U.S.C. § 153(10).

49.     Lyft is, and at all times mentioned herein was, a corporation and a "person," as defined by 47 U.S.C. § 153(10).

50.     On multiple occasions over numerous days, within the applicable statute of limitations period and four years prior to the date this Complaint was filed, Lyft sent text messages to Plaintiff and the Class on their cellular telephone numbers using an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1).

51.     The text messages sent to Plaintiff and the Class by Lyft constituted "artificial or prerecorded voice" calls prohibited by 47 U.S.C. § 227(b)(1)(A).

52.     The telephone numbers of Plaintiff and the Class called by Lyft were assigned to a cellular telephone service for which they incurs a charge for incoming calls as defined by 47 U.S.C. § 227(b)(1).

53.     The text messages sent to Plaintiff and the Class by Lyft constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

54.     Plaintiff and the Class did not provide express consent to Lyft to receive text messages on Plaintiff's and the Class' cellular telephones, pursuant to 47 U.S.C. § 227(b)(1)(A).

55.     As a result, the telephone calls made to Plaintiff and the Class by Lyft were in violation of 47 U.S.C. § 227(b)(1).

## CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227 *et seq.*)**
(Against All Defendants)

56.     Plaintiff incorporates by reference all above paragraphs as though fully repeated herein.

57. The TCPA prohibits the use of an ATDS to make any call or send any text message to a wireless cellular telephone number without the prior express consent of the contacted party or in the absence of an emergency.

58. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

59. As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and members of the Class are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3).

60. As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and members of the Class are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(b)(3).

61. Plaintiff and members of the Class also suffered damages in the form of text message, data, and other charges to their cellular telephone plans.

62. Plaintiff and members of the Class are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future.

**SECOND CLAIM FOR RELIEF**
**Unlawful and Unfair Business Acts and Practices**
**(Violation of California Business & Professions Code §§ 17200 et seq.)**
(Against All Defendants)

63. Plaintiff incorporates by reference all above paragraphs as though fully repeated herein.

64. The conduct, business acts and practices of Defendant as alleged herein constituted "unlawful" and "unfair" business acts and practices within the meaning of the California's Unfair Competition Laws, California Business & Professions Code §§ 17200 et seq.

65. Defendant has engaged in "unlawful" business acts and practices by Defendant's negligent, knowing, and/or willful sending text messages to Plaintiff and the Class on their cellular telephones, in violation of the TCPA, and thereby invading Plaintiff's and the Class' California Constitutional right to privacy. Plaintiff reserves the right to allege other violations of law which

constitute unlawful acts or practices.

66.     Defendant has also engaged in "unfair" business acts or practices in that the harm caused by Defendant's negligent, knowing, and/or willful sending text messages to Plaintiff and the Class on their cellular telephones, in violation of the TCPA, and the invasion of Plaintiff's and the Class' California Constitutional right to privacy outweighs the utility of such conduct and such conduct offends public policy, is immoral, unscrupulous, unethical, deceitful and offensive, and causes substantial injury to Plaintiff and the Class.

67.     The aforementioned "unlawful" or "unfair" business acts or practices conducted by Defendant has been committed in the past and is believed to continue to this day. Defendant has failed to acknowledge the wrongful nature of its actions, and Defendant has not corrected or ceased its "unlawful" and "unfair" conduct.

68.     Plaintiff and members of the Class have suffered an injury in fact, were harmed by the acts of Defendant in at least the following ways: (a) Defendant illegally sent text messages to Plaintiff and Class members via their cellular telephones thereby causing Plaintiff and Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and Class members previously paid; (b) by having to retrieve or administer text messages sent by Defendant illegally; and (c) invading the privacy of Plaintiff and the members of the Class by sending text messages without their prior expressed consent.

69.     Additionally, Plaintiff and members of the Class have suffered a loss of money or property in the form of cellular telephone charges or reduce cellular telephone time for which Plaintiff and Class members previously paid, and have suffered a loss of money or property in that Plaintiff and the Class have suffered and are each entitled to $500.00 in statutory damages, for each and every negligent violation of the TCPA, and $1,500.00 in statutory damages, for each and every knowing and/or willful violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3).

70.     Pursuant to the Business & Professions Code § 17203, Plaintiff and the Class seek an order of this Court requiring full restitution of all monies wrongfully acquired by Defendant from them by means of such "unlawful" and "unfair" conduct, so as to restore any and all monies to Plaintiff and the Class which were acquired from them and obtained by means of such "unlawful"

and "unfair" conduct, and which ill-gotten gains are still retained by Defendant.

71.     Pursuant to the Business & Professions Code § 17203, Plaintiff and the Class also seek an order enjoining Defendant from engaging in any conduct that facilitates further violations of the TCPA.  Absent injunctive relief from the Court, Defendant is likely to continue to injure Plaintiff and the Class.

72.     Pursuant to California Code of Civil Procedure § 1021.5, Plaintiff and the Class also seek an order awarding them reasonable attorney's fees from Defendant because this action involves the enforcement of an important right affecting the public interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

1. Statutory damages of $500.00 for each negligent violation of the TCPA during the Class Period;

2. Statutory damages of $1,500.00 for each knowing or willful violation of the TCPA during the Class Period;

3. Actual and punitive damages arising from Defendants' negligent and willful or intentional illegal conduct;

4. An injunction enjoining Defendant from engaging in any conduct that facilitates further violations of the TCPA;

5. Restitution of all monies wrongfully acquired by Defendant derived from such unlawful activity;

6. Attorney's fees;

7. Litigation expenses and costs of the instant suit; and

8. Such other or further relief as the Court deems necessary, just, or proper.

Dated: February 4, 2016                                          KEEGAN & BAKER, LLP

                                                                 s/ Patrick N. Keegan
                                                                 Patrick N. Keegan, Esq.
                                                                 Attorney for Plaintiff

## JURY DEMAND

Plaintiff and the Class hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

Dated: February 4, 2016                                KEEGAN & BAKER, LLP


                                                       s/ Patrick N. Keegan
                                                       Patrick N. Keegan, Esq.
                                                       Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on February 4, 2016, a true and correct copy of the **FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF: 1. THE TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. §§ 227 *et seq*.); and 2. THE CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 *et seq*.** was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's EM/ECF System.

s/ Patrick N. Keegan
Patrick N. Keegan, Esq.
pkeegan@keeganbaker.com