**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS O'CONNOR,<br>    Plaintiff,<br>v.<br>LYFT, INC.,<br>    Defendant. | Case No. 16-cv-00351-JSW<br><br>**ORDER DENYING MOTION TO DISMISS**<br>Re: Docket Nos. 18 |

Now before the Court for consideration is the motion to dismiss filed by Defendant, Lyft, Inc. ("Defendant"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court VACATES the hearing scheduled for April 22, 2016, and it HEREBY DENIES Defendant's motion.

**BACKGROUND**

Plaintiff, Douglas O'Connor ("Plaintiff"), alleges that he was interested in becoming a driver for Defendant and began the sign-up process on Defendant's website. (First Amended Complaint ("FAC") ¶ 21.) According to Plaintiff, he "provided some of his personal information" to Defendant at the beginning of this process, decided not to complete the sign-up process, and withdrew his application. (*Id.* ¶¶ 22-23.) Plaintiff alleges that he "did not make available, supply, furnish for use, or knowingly release his personal information to" Defendant, and "did not at, at any point during the sign-up process, provide [Defendant] with his express consent to receive automated text message to his cell phone." (*Id.* ¶¶ 23-24.)

Plaintiff alleges that, between June 2013 and July 2014, he began to receive automated text messages from the Defendant on his cell phone. (*Id.* ¶¶ 25, 29.) On June 28, 2013, Defendant

1  sent him two text messages, which read: "Hey there! Your Lyft driver application is nearly
2  finished but before we can proceed, I need you to open the Lyft app and follow the short tutorial
3  that pops up … when you tap the car icon.  Just give me a call back at (415) 508-4571 when
4  you've done that and I'd be happy to help you become a part of the Lyft community :)." (*Id.*
5  ¶ 26.) On July 19, 2013, Defendant sent Plaintiff another text message, which read: "Are you still
6  interested in driving with Lyft?  If not, reply no.  If so, call me at 415-508-4751.  Olivia @ Lyft."
7  (*Id.* ¶ 27.)  According to Plaintiff, what happened to him is an example of Defendant's "recruiting
8  tactics," which includes "sending prolific text message, i.e. wireless spam to prospective Lyft
9  drivers … on their cellular telephones without their prior express consent[.]" (*Id.* ¶ 11.)

Based on these and other allegations, which the Court shall address as necessary, Plaintiff asserts claims on behalf of himself and a putative class for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. section 227, *et seq.* (the "TCPA Claim") and for California's Unfair Competition Law, Business and Professions Code section 17200, *et seq.* (the "UCL Claim").

**ANALYSIS**

A.  **Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the complaint fails to state a claim upon which relief can be granted.  The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw

the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Where, as here, a defendant moves to dismiss based on an affirmative defense, a court may resolve the motion if the allegations in the complaint are sufficient to establish the defense. *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013); *Reardon v. Uber Technologies, Inc.*, 115 F. Supp. 3d 1090, 1093 (N.D. Cal. 2015) (affirmative defense must be "apparent from the face of the complaint"). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g. Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**B.      The Court Shall Not Consider Defendant's Exhibits.**

Defendant attached two screen-shots of its website as exhibits to support its argument that Plaintiff consented to receive the texts at issue. As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). Documents subject to judicial notice may be considered on a motion to dismiss. In doing so, the Court does not convert a motion to dismiss to one for summary judgment. *See Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). Under the "incorporation by reference" doctrine, a court may consider "documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)) (quoting *Branch*, 14 F.3d at 454); *see also Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

According to Defendant, in order to start the application process, a potential driver *must* input his or her phone number and click "Apply" to get to the next step. Defendant also contends that if a potential driver clicks "Apply" but does not input a proper phone number, the potential driver will see a message that says "Please enter a valid phone number." (*See* Mot., Ex. 1.) According to Defendant, once the potential driver enters a valid phone number and clicks

3

1  "Apply," that potential driver will see a message that says "Awesome! Thanks for applying.
2  Expect a phone call from a member of our DriveTeam within an hour from (415) 649-6750." (*Id.*,
3  Ex. 2.)

4  Defendant argues that the Court can, and should, consider the screen-shots under the "incorporation by reference" doctrine. Plaintiff objects to the screen-shots, in part, on the basis that Defendant did not properly authenticate them. Defendant asks the Court to infer how its application process works from the screen shots alone. It has not submitted a declaration to establish that the screen-shots accurately depict Defendant's website at the time Plaintiff purportedly visited the website to begin the application process. Indeed, they are completely unrelated to Plaintiff's application. The Court sustains Plaintiff's objection, and it shall not consider them under the incorporation by reference doctrine.

12  On reply, Defendant argues that the screen-shots it submitted are substantially similar to its website as it existed in September 2013. In support of this argument, Defendant refers the Court to the Internet Archive's Wayback Machine.[1] Courts have found that contents of web pages contained on and available through the Wayback Machine are judicially noticeable under Federal Rule of Evidence 201. *See, e.g., Erickson v. Neb. Mach. Co.*, No. 15-cv-01147-JD, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015) (citing cases); *Under A Foot Plant Co. v. Exterior Design, Inc.*, No. 6:14-cv-01371-AA, 2015 WL 1401697, at *2 (D. Or. Mar. 24, 2015). Because the application page alone does not establish conclusively that Plaintiff consented to receive the texts, the Court shall not take judicial notice of that document.

**C.    Plaintiff Sufficiently Alleges a Violation of the TCPA.**

In order to state a claim for a violation of the TCPA, Plaintiff must allege: (1) that Defendant made a call using an "automatic dialing system or an artificial or prerecorded voice;" (2) to a telephone number assigned to a cellular telephone number or any service for which Plaintiff is charged for the call; and (3) without Plaintiff's consent. *See Meyer v. Portfolio*

---

[1]    *See* https://web.archive.org/web/20130910001159/http://www.lyft.com/drivers (screen captured Sept. 10, 2013) (last visited April 8, 2016).

4

1  *Recovery Systems, Inc.*, 707 F.3d 1036, 1043 (9th Cir. 2012); 47 U.S.C. § 227(b)(1)(A)(iii).
2  Defendant challenges Plaintiff's ability to satisfy the first and third of these elements. The Court
3  addresses the latter argument first.

4       **1.**       **Prior Express Consent.**

5        The parties dispute whether Plaintiff's allegations are sufficient to show "prior express
6  consent." The Federal Communications Commission has determined that "persons who
7  knowingly release their phone numbers have in effect given their invitation or permissions to be
8  called at the number which they have given." *In re Rules & Regulations Implementing the Tel.*
9  *Consumer Prot. Act of 1991, Report and Order*, 7 FCC Rcd. 8752, 8769 (Oct. 16, 1992) ("1992
10 Order"). The Ninth Circuit has held that, in the context of a case like this, the FCC's
11 interpretation of "prior express consent" must be presumed valid. *See, e.g., Baird v. Sabre, Inc.*, --
12 Fed. Appx. --, 2016 WL 424778, at *1 (9th Cir. Feb. 3, 2016) (finding plaintiff expressly
13 consented to text message when she knowingly released cell phone number to defendant while
14 making flight reservations). As one court within this district recently stated, "the great weight of
15 authority holds that an individual who knowingly provides her telephone number to another party
16 without limiting instructions has given her prior express consent to receive calls at that number
17 from that party." *Daniels v. Five Stars Loyalty, Inc.*, No. 15-cv-03456-WHO, 2015 WL 7454260,
18 at *6 (Nov. 24, 2015); *see also Reardon*, 115 F. Supp. 2d at 1097 (citing cases).

19       In *Reardon*, the plaintiffs alleged that they had provided certain personal information,
20 including their cell phone numbers, to Uber as part of the application process to become a driver
21 and, thereafter, received text messages from Uber. As is the case with Plaintiff here, several of the
22 plaintiffs in the *Reardon* case alleged that they did not complete the application. 115 F. Supp. 2d
23 at 1092. Uber moved to dismiss on the basis that each of the plaintiffs gave their "prior express
24 consent" to receive the texts when they provided Uber with their phone numbers.

25       The court agreed, in general, that "any plaintiff who provided her phone number as part of
26 the Uber application process consented to receive Uber's texts about becoming an Uber driver."
27 *Id.* at 1099. However, as to the plaintiffs who alleged they did not complete the process, the court
28 found that it could not conclude, from the face of the complaint, that the plaintiffs "provided" their

5

phone numbers to Uber within the meaning of the 1992 Order, and thus could not conclude they provided "prior express consent." *Id.* at 1100-1102. The court explained its reasoning, in part, as follows:

> A close analogy would be a job applicant who goes in person to a local business. She might sit at a table, and fill out a paper application, providing such details as her address and mobile phone number, date of birth, and other personal information. While on the premises of the business, however, she has a change of heart and decides not to apply for the job after all. She does not complete her application or turn it in, and instead throws it away when she gets home. Has she "provided" her mobile phone number to the business, just because an employee of the business looked over her shoulder while she was writing?

*Id.* at 1101. The court concluded it would be difficult to conclude, as a matter of law, that the answer would be yes. *Id.* The court posited that the answer might be different "if the applicant actually *submitted* the incomplete application, and the business then contacted her concerning that application." *Id.* at n.7 (emphasis added); *see also id.* at 1100 (distinguishing situations where a plaintiff "submitted" information to a defendant). Defendant argues that the facts in this case fall squarely within the latter factual scenario and, thus, compel a conclusion that Plaintiff gave prior express consent to receive the texts.

Plaintiff may face an uphill battle to overcome a motion for summary judgment on the issue of prior express consent, especially if discovery shows that he did click "Apply," on Defendant's application page. However, as in the *Reardon* case, "the question now before the Court is the sufficiency of the Complaint." *Id.* at 1101. The Court cannot determine, based on the face of the FAC, that Plaintiff gave "prior express consent" to receive the texts. *Sams*, 713 F.3d at 1179.

Accordingly, the Court DENIES Defendant's motion on this basis.

**2.    Automated Dialing System.**

Defendant also argues that Plaintiff's has failed to allege facts to show it used an "automatic dialing system" ("ATDS"). The TCPA defines an ATDS as "equipment which has the capacity … to store or produce telephone numbers to be called, using a random or sequential number generator; and … to dial such numbers." 47 U.S.C. § 227(a)(1)(A)-(B). Plaintiff alleges

that Defendant "sent these text messages using" an ATDS.  He also alleges that Defendant's "ATDS has the capability to both: (1) store or produce cellular phone numbers to be texted using a random or sequential number generator, and (2) automatically send text messages from a list or database of cellular telephone numbers, without human intervention."  (FAC ¶ 33.)  Standing alone, these allegations are no more than legal conclusions couched as fact.  *See, e.g., Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) ("[I]t is conclusory to allege that messages were sent 'using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential generator.'").

In the *Kramer* case, the court denied a motion to dismiss and found that the plaintiff sufficiently alleged the use of an ATDS, where the plaintiff supplemented the otherwise conclusory allegations with allegations that described the "impersonal manner" of the messages.  The court also noted that the messages were advertisements and that the plaintiff had no other reason to be in contact with the defendants.  *Kramer*, 759 F. Supp. 2d at 1171.  Similarly, an allegation of a "telltale pause" between the time the plaintiff answered a call and the time an agent began speaking has been found sufficient to support an inference that calls were made using an ATDS.  *Lofton v. Verizon Wireless (VAW) LLC*, No. 13-CV-5665-YGR, 2015 WL 1254681, at *5 (N.D. Cal. Mar. 18, 2015).  Yet another court within this District found that the plaintiff included sufficient facts to show the use of an ATDS where the plaintiff alleged that the text messages were formatted in an SMS code licensed to the defendants and were scripted in an impersonal manner.  *Kazemi v. Payless Shoesource, Inc.,* No. 09-CV-5142-MHP, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010)

In this case, Plaintiff does not allege that the texts were formatted in an SMS code.  Indeed, as to at least one message, Plaintiff alleges that the text came from a specific phone number.  (*Id.* ¶ 29.)  Those facts distinguish the facts in this case from the facts in the *Kazemi* case.  Plaintiff alleges that these texts are "large automated text distributions from [Defendant] to multiple recipients," but does not include any underlying facts to support this allegation.  (*Id.* ¶ 30.)

Plaintiff does allege that the texts were impersonal, in that they were not addressed to him directly.  (*Id.*)  The content of the messages show that they relate to an application for employment

7

and not an advertisement. That fact provides a reason for Defendant to have been in contact with Plaintiff, which also distinguishes the facts here from the facts in *Kramer*. Plaintiff also has alleged that of the texts was signed "Olivia" and included a phone number, which undermines the allegations that the texts were randomly or sequentially generated. *See, e.g., Flores v. Adir International, LLC*, No. 15-CV-00076-AB-(PLAx), 2015 WL 4340020, at *3-*5 (C.D. Cal. July 15, 2015) (in debt collection case, where the messages included a reference number, court found that messages referred to plaintiff indirectly and suggested that attempts to contact plaintiff were not random).

The facts described above suggest that it is plausible that the text messages were sent by hand. *See, e.g., Friedman v. Massage Envy Franchising, LLC*, No. 3:12-cv-02962-L-RBB, 2013 WL 3026641, at *2-3 (S.D. Cal. June 13, 2013). However, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Pursuant to *Starr*, court may dismiss a complaint under Rule 12(b)(6) "only when [a] defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." *Id.* (emphasis in original). The Court finds that is not the case here. Plaintiff has done more than provide a recitation of the statutory definition of an ATDS. The Court finds the facts alleged are sufficient under *Twombly* to allege that Defendant used an ATDS to generate these texts.

Accordingly, the Court DENIES Defendant's motion to dismiss on this basis as well.

**D.     Plaintiff States a Claim for An Alleged Violation of the UCL.**

Defendant also moves to dismiss the UCL Claim. Defendant argues that because Plaintiff did not respond to any of its arguments, the Court should deem this claim to be abandoned. The Court declines to do so, because the UCL Claim is dependent upon the same facts that support the TCPA Claim. Plaintiff has stated a claim for a violation of the TCPA, therefore he has stated a claim under the unlawful prong of the UCL. *See Berryman v. Merit Property Mgmt.*, 152 Cal. App. 4th 1544, 1554 (2007). Defendant also argues Plaintiff fails to state a claim under the "unfair" prong, but its arguments are premised on its position that Plaintiff gave his prior express

8

1      consent.  For the reasons set forth above, the Court finds that it cannot resolve the issue of consent

2      on this record.

3               Accordingly, the Court DENIES Defendant's motion to dismiss the UCL Claim.

**E.     The Court Denies the Motion to Dismiss the Prayer for Punitive Damages and Attorneys' Fees.**

6               Finally, Defendant moves to dismiss the portions of Plaintiff's prayer for relief where he

7      seeks punitive damages and attorneys' fees.  With respect to punitive damages, at least one court

8      in this district has denied a motion to dismiss a prayer for punitive damages on the basis that the

9      treble damages provision of the TCPA was not punitive in nature.  *See Roylance v. Carney,* No.

10     13-cv-04258-PSG, 2014 WL 1652440, at *5 (N.D. Cal. April 23, 2014).  The *Roylance* court

11     relied on a decision from the Eleventh Circuit, in which that court found, in the context of an

12     insurance dispute, that the TCPA's treble damages provision is not intended to be punitive.  *Id.*

13     (citing *Alea London Ltd. v. American Home Services, Inc.*, 638 F.3d 768, 778-79 (11th Cir.

14     2011)); *see also Penzer v. Transportation Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008) (citing

15     cases).  However, other courts have reached the opposite conclusion, albeit in different contexts.

16     *See, e.g., U.S. Fax Law Center v. iHire, Inc.*, 345 F. Supp. 2d 1428, 1253 (D. Colo. 2005) (finding

17     claim not assignable because TCPA is penal in nature), *aff'd on other grounds,* 476 F.3d 1112

18     (10th Cir. 2007); *Kaplan v. First City Mortgage*, 183 Misc. 2d 24, 28, 701 N.Y.S.2d 859, 863

19     (1999).  Based on the existing record, the Court cannot conclude that, as a matter of law, Plaintiff

20     could not recover punitive damages.

21              Accordingly, the Court denies the motion to dismiss the prayer for punitive damages.

22              With respect to attorneys' fees, if a plaintiff prevails "in federal court on California claims,

23     the plaintiff "may obtain attorneys' fees under section 1021.5."  *Klien v. City of Laguna Beach*,

24     810 F.3d 693, 701 (9th Cir. 2016) (citing *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470,

25     1478 (9th Cir.1995)).  The Court has denied the motion to dismiss the UCL Claim, and thus a state

26     claim remains pending in this case.  "Although the UCL does not provide for attorney fees, a

27     prevailing plaintiff may seek attorney fees as a private attorney general under Code of Civil

28     Procedure section 1021.5."  *Yanting Zhang v. Superior Court*, 57 Cal. 4th 364, 371 n.4 (2013)

United States District Court
Northern District of California

(citing *Davis v. Ford Motor Credit Co. LLC*, 179 Cal. App. 4th 581, 600 (2009)).

Accordingly, the Court denies the motion to dismiss the prayer for attorneys' fees.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss. The parties shall appear as scheduled for the case management conference on April 29, 2016.

**IT IS SO ORDERED.**

Dated: April 14, 2016

_____
JEFFREY S. WHITE
United States District Judge